The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| ROBERT H. KOCH, | ) | CASE NO. 10-61021 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |

Before the court is the Application for Compensation filed by Debtor's counsel, Debra E. Booher (hereafter "Attorney Booher"), filed on January 13, 2011. Through the fee application, Attorney Booher seeks total compensation of $3,000. She received $1,500 before the case was filed, with $1,500 to be paid through the plan. Chapter 13 trustee Toby L. Rosen (hereafter "Trustee") filed an objection, resulting in Attorney Booher filing an itemization in support of the requested fees. The court held a hearing on March 9, 2011, attended by Toby L. Rosen and Dynele Schinker-Kuharich.

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409.

## FACTS

Debtor filed a chapter 13 petition on March 16, 2010. He is married, but his wife did not join him in the bankruptcy filing. No extraordinary facts are apparent from the record of this case. Debtor has an interest in real estate secured by a mortgage and one other secured debt, a car. His mortgage is current. He has no priority debt and scheduled approximately $40,000 in unsecured debt. At the time of filing, he was being sued by one

of the unsecured creditors. Debtor is retired and his only source of income is from his pension/retirement. He is a below-median income debtor. Because of a previous chapter 7 filing, he is ineligible for a chapter 7 discharge at this time.

The case proceeded to confirmation quickly, with little obstacle. It appears that during the 341 meeting, Trustee learned that Debtor's wife was eligible for social security. As a result, Debtor filed amended schedules I and J. Although the trustee filed an objection to confirmation, it was withdrawn less than a week later. Only two non-routine events occurred in this case: the filing of the amended schedules and this fee application.

## LAW AND ANALYSIS

For the reasons that follow, the Court will not award $3,000 in compensation to Attorney Booher.

Compensation awards are governed in general by 11 U.S.C. § 330. In addition, this court's Administrative Order 08-05, entered on May 6, 2008, specifically advises that fee applications must also conform to Federal Rule of Bankruptcy Procedure 2016(a). In this district, there is a local component to Rule 2016(a) which requires applications for compensation to comply with the "Court's Guidelines for Compensation and Expense Reimbursement of Professionals." This is a reference to General Order 93-1, entered July 28, 1993.

Attorney Booher's fee application does not comply with General Order 93-1. Many of the entries are vague or generic. Multiple entries reference "Email correspondence with client and corresponding notes to database" or similar. The itemization includes the time spent filing documents with the court. It is also not clear that travel time is appropriately calculated.

More than $400 of the amount outlined in the itemization is related to preparation of the fee application. This represents more than ten percent of the total request. This exceeds what is customary for a fee application. *See, e.g.,* In re Copeland, 154 B.R. 693 (Bankr. W.D. Mich. 1993) (advancing a general rule that time spent preparing fee applications in chapter 13 is not compensable because it has no benefit to the estate; declaring nineteen percent for preparation is excessive); In re Atwell, 148 B.R. 483 (Bankr. W.D. Ky. 1993) (noting the controversy as to whether chapter 13 fee application preparation awards should be allowed, but establishing a five percent ceiling).

The Court is also concerned about potential churning. Over $1,300, or nearly one-half, of this fee application results from time entries referencing some type of communication with the client, either by email or telephone, and then adding notes of the same to the database. Significantly, the bulk of the time for this service is billed by an attorney. Also, it appears that the client is billed not only for the actual communication, but for the time necessary to log it in to a database. As further indication of potential churning, between confirmation and the filing of the fee application, during a period when there is virtually no activity on the docket, a total of $389 was billed.

Attorneys are entitled to reasonable compensation. Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

In the Sixth Circuit, "reasonable compensation" is based on a lodestar calculation which requires a bankruptcy court to "multiply the attorney's reasonable hourly rate by the number of hours reasonably expended." *See* In re Boddy, 950 F.2d 334, 337 (6th Cir. 1991). The lodestar amount is subject to upward or downward adjustment based on twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Geier v. Sundquist, 372 F.3d 784, 793 (6th Cir. 2004) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also* Hensley v. Eckerhart, 461 U.S. 424 (1983).

In reality, most chapter 13 bankruptcy cases are paid under a presumptive, or no-look, fee. This is a standardization of what is deemed reasonable in the bankruptcy arena. When a debtor seeks a bankruptcy attorney, the fee generally encompasses a range of services. In the event there is an exceptional situation, which is outside the scope of the anticipated range, the attorney can request additional fees through a fee application. The fee application is not to be viewed as a means to circumvent the customary and usual fee.

Relying on an opinion from the Sixth Circuit Court of Appeals, the Bankruptcy Appellate Panel countenanced the use of no-look fees, stating "[t]he Panel also believes that "no look" fees are permissible and should be encouraged in appropriate circumstances." *See* In re Williams, 357 B.R. 434, fn. 3 (Bankr. N.D. Ohio 2007) (citing Boddy v. U.S. Bankruptcy Court (In re Boddy), 950 F.2d 334 (6th Cir. 1991) (other citations in footnote omitted)). No look fees have approval in bankruptcy cases in several other circuits as well. *See, e.g.,* Fitzgibbons v. Zeman (In re Matney), 365 Fed.Appx. 126 (10th Cir. 2010) (unpublished); Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592 (9th Cir. 2006); In re Bond, 254 F.3d 669 (7th Cir. 2001). Presumptive fees are utilized in bankruptcy courts throughout the nation. In re Vernell, 2008 WL 3992635 (Bankr. S.D.

Fla. 2008) (unreported); In re Wagoner, 2008 WL 2233502 (Bankr. D. Ariz. 2008); In re Atoe, 2008 WL 8006161 *2 (Bankr. S.D. Cal. 2008) (unpublished) (extolling "presumptive or no-look fees are an important process and result in substantial economies in Chapter 13 cases in part because the time and expense of formal fee applications are avoided in routine cases"); In re Hennelly, 2007 WL 3376641 (Bankr. D. Mont. 2007); In re Nolan, 2006 WL 2085238 (Bankr. D. N.J. 2006). The utility of using no-look or presumptive fees is evident.

Moreover, it is obvious that the market has endorsed and accepted the no-look arrangement. Sellers/lawyers and buyers/clients both accept and promote the practice. The analogy for practicing lawyers is self-insurance. Lawyers are like self-insurers with a stop-loss. Self-insurers pay their own losses as if they were their own insurance company. Nearly all self-insurers have a stop-loss policy that truly is insurance. The self-insured pays its own losses up to a point, say $250,000 per accident, and then has a stop-loss that pays for losses above this amount.

Similarly, the consumer bankruptcy attorney accepts a no-look fee with the knowledge that it may require fewer hours and be more highly profitable, just as a self-insurer makes more money by virtue of the absence of normal premiums, including the insurer's normal profit margin. Additionally, there are fewer hours and complications by not having to prepare fee applications and haggle with clients overwhelmingly devoid of the experience and training to comprehend complex fee arrangements.

If the case takes more time, then the attorney makes a little less as a function of time. If the case becomes unusually time consuming, the attorney can file for additional fees, just like a stop-loss policy. All known no-look fees contain provisions to this effect.

This reality could be viewed as both adapting and adopting lodestar principles. The perceived limited time required, the lack of novelty, the skill required, the absence of precluding other employment, the customary fee, the primarily fixed yet modestly contingent nature of the fee, the absence of time limitations or the ability to quickly deal with them, the limited amount involved, the absence of "undesirability," and awards in similar cases all lead to rate and hours multipliers that are variable, yet fixed within a range. Rather than an after the fact rate times hours, it is a rate times hours range with an upper limit that is then followed by a rates times hours approach.

The acceptability by attorneys and clients is reflected in scores of attorneys advertising for the work and touting the advantages of this pricing. This is both custom and market adaptation.

In this case, the no-look fee is $2,000: $1,500 as a base fee and $500 additional for end-of-the-case fees if the case succeeds. On these facts, the court finds the customary fee represents reasonable compensation. The itemization provided by Attorney Booher shows that her lodestar is skewed because the hours expended were not reasonable. The time and labor required to handle this case should be on the very lowest end of the scale. Nothing was contested. The only objection to confirmation was withdrawn. There were no motions for relief from stay, no claim objections, no motions to suspend payments, no amended plans or modifications of the plan, etc. There was nothing complex about this case. There were no complex legal issues presented, so no

particularized legal knowledge, outside of general bankruptcy, was necessary. Attorney Booher was not prevented from taking other work based on her acceptance of this case. No time limitations are identified. There is nothing undesirable about the case. Debtor contacted Attorney Booher in January 2010 and the case was filed in March 2010, so there is no long term relationship between them. The Court's no-look fee represents the fee award in similar cases.

Also notable, the amount paid to creditors is nominal: Debtor is paying a mere $128 per month for thirty-six months. Just under $2,000 of this will go to the secured lender for the car. After administrative fees, Trustee estimates unsecured creditors will receive seven percent, or approximately $2,290. While approval of the fee application may be a good result for Attorney Booher, this case in general is of less value to the unsecured creditors.

Virtually every one of the factors which can be considered in reducing a fee is applicable in the present case. Consequently, the court finds that the application seeks excessive fees.

The court allows at total of $2,000 in compensation. Attorney Booher received $1,500 prior to filing and shall be paid an additional $500. As this represents the case termination fee outlined in Administrative Order 08-05, it is payable at the end of the case.

The court will issue an order with this opinion.

#    #    #

**Service List:**

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702

Debra E Booher
1350 Portage Trail
Cuyahoga Falls, OH 44223